UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH CARVER,

                        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.

_____/

Civil Action No.: 17-12728
Honorable Avern Cohn
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 14, 15]**

Plaintiff Elizabeth Carver appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying her application

for disability insurance benefits (DIB) under the Social Security Act (SSA).

Both parties have filed summary judgment motions, referred to this Court

for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the record, the Court finds that the administrative law

judge's (ALJ) decision is supported by substantial evidence, and thus

**RECOMMENDS** that:

- Carver's motion [ECF No. 14] be **DENIED**;

- the Commissioner's motion [ECF No. 15] be **GRANTED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.      BACKGROUND

### A.      Background and Disability Applications

Carver was born on August 8, 1968, making her 46 years old on her alleged onset date of September 2, 2014.  [ECF No. 12-3, Tr. 117].  She completed three years of college and has prior work history as a sheriff's department corrections officer.  [ECF No. 12-6, Tr. 206].  Carver alleged disability due to diabetes, polycystic ovarian syndrome, and migraines. [ECF No. 12-6, Tr. 205].

After the Commissioner denied her disability application initially, Carver requested a hearing, which took place in March 2016; she and a vocational expert (VE) testified.  [ECF No. 12-2, Tr. 77-116].  In a July 1, 2016 written decision, the ALJ found Carver to be not disabled.  [*Id.*, Tr. 12-29].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Carver timely filed for judicial review.  [*Id.*, Tr. 1-4; ECF No. 1].

### B.      The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Carver was not disabled.  At the first step, she found that Carver had not engaged in substantial gainful activity since her alleged onset date.  [ECF No. 12-2, Tr. 17].  At the second step, the ALJ found that Carver had the severe impairments of "diabetes type I with sensorimotor polyneuropathy and gastroparesis with a history of diabetic ketoacidosis; degenerative disc disease with a bulging disc at the lumbar level; left shoulder impingement with bursitis, bursal sided rotator cuff tear status post arthroscopy; subacromial decompression and rotator cuff debridement."  [*Id.*, Tr. 17]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 18].

Between the third and fourth steps, the ALJ found that Carver had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a)[2], except that:

---

[2] To perform a full range of sedentary work, an individual must be able to lift up to 10 pounds, with occasional lifting or carrying of objects like docket files, ledgers and small tools. Walking and standing are required occasionally, in addition to sitting.  § 404.1567(a).

[T]he claimant can never climb ladders, ropes or scaffolds; occasionally climb stairs, balance, stoop, kneel, crouch and crawl; avoid workplace hazards, such as dangerous moving machinery and unprotected heights; occasional use of foot controls; occasional use of the dominant left upper extremity for lifting/carrying and limited to low stress work defined as self-paced work that is not at a production rate pace and is not tandem/team work with coworkers.

[*Id.,* Tr. 18].  At the fourth step, the ALJ concluded that Carver could not perform her past relevant work.  [*Id.,* Tr. 22].  At the final step, after considering Carver's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Carver could perform work as a surveillance system monitor, which exists in significant numbers in the national economy.  [*Id.,* Tr. 23].

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the

evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence.  *Bass v.*

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Carver argues that the ALJ's credibility determination was

erroneous,[3] but the Court finds that the ALJ's decision is supported by

substantial evidence and recommends that it be affirmed.

**B.**

Although Carver argues that the ALJ's "credibility determination" was

erroneous, the ALJ's actual finding did not address "credibility."  Instead,

the ALJ found that Carver's "statements concerning the intensity,

persistence, and limiting effects of her symptoms were not entirely

consistent with the medical evidence and other evidence in the record."

[ECF No. 12-2, Tr. 19-20].  The ALJ's decision postdates Social Security

Ruling 16-3p, which eliminates use of the term "credibility" from official

policy and clarifies that a "subjective symptom evaluation is not an

---

[3] Carver also asserted under the title "Issues For Review" that the ALJ
erred in failing to find her neuropathy a severe impairment, and that the
RFC assessment is inaccurate and unsupported.  [ECF No. 14,
PageID.679].  But her argument does not address these claims, [*Id.*,
PageID.680-83], so they are waived.  *See McPherson v. Kelsey*, 125 F.3d
989, 995 (6th Cir. 1997) (issues asserted only perfunctorily are deemed
waived).  In addition, the ALJ did in fact list "diabetes type I with
sensorimotor *polyneuropathy"* as a severe impairment.  [ECF No. 12-2, Tr.
17 (emphasis added)].

6

examination of an individual's character."  SSR 16-3p, 2016 WL 1119029,

at *1.  *See also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017

WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523

(S.D. Ohio Jan. 22, 2018) (noting that under SSR 16-3p, "an ALJ must

focus on the consistency of an individual's statements about the intensity,

persistence and limiting effects of symptoms, rather than credibility.").

Despite the linguistic clarification, courts continue to rely on pre-SSR

16-3p authority providing that the ALJ's credibility determinations are given

great weight.  *See, e.g., Kilburn v. Comm'r of Soc. Sec.,* No. 1:17-CV-603,

2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of

Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18,

2018).  Thus, an ALJ's subjective symptom evaluation should not be

disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379

(6th Cir. 2001).  At the same time, "such determinations must find support

in the record."  *Rogers*, 486 F.3d at 241.

At the hearing, Carver testified that she had become a "brittle

diabetic" in "the last couple of years," and that she developed

gastroparesis, which coupled with the diabetes caused her to receive a

medical retirement in September 2014.  [ECF No. 12-2, Tr. 87-88].  She

also testified to having neuropathy in her feet and a broken right foot, and

getting frequent migraines. [*Id.*, Tr. 88-89]. She brought a cane to the hearing, which she stated was primarily for her back. [*Id.*, Tr. 90]. She also said that she has received three cortisone injections and recently had a medial branch borescopy to determine if she was a candidate for a risodomy procedure to relieve her lower back pain. [*Id.*, Tr. 91].

Carver further testified that she wakes up several times during the night due to either shoulder pain, back pain, or low or high blood sugar. [*Id.*, Tr. 94]. Her husband assists her in the shower in case she has a muscle spasm and becomes unstable, and he does all of the household laundry. [*Id.*, Tr. 94-95]. She testified at first that she does not drive at all, but then stated that she drove to the hearing because her husband was up all night and needed sleep. [*Id.*, Tr. 95-96].

In making her subjective symptom evaluation, the ALJ relied in part on Carver's report of daily living activities on an SSA function report dated September 16, 2014, two weeks after the alleged onset date. [ECF No. 12-6, Tr. 193-203]. In that report, Carver noted that she was unable to perform long distance driving, but that her impairment caused her no problem with attending to her personal care, including dressing and bathing. [*Id.*, Tr. 194]. The SSA function report also states that Carver prepares her own meals daily, does laundry, washes dishes, dusts furniture, and sweeps

8

floors, without the need of help or encouragement.  [*Id.*, Tr. 195].  The ALJ

aptly found Carver's daily activities as reported on her SSA function report

to be "not very consistent with her testimony."  [ECF No. 12-2, Tr. 19].

Carver argues that the function report "should not hold much weight,"

having been completed nearly 18 months prior to the hearing.  [ECF No.

14, PageID.681].  But Carver's SSA function report was submitted

specifically to support her DIB application.  [ECF No. 12-6, Tr. 193-200].

ALJs are required "to evaluate the intensity, persistence, and limiting

effects" of a claimant's symptoms, beginning with her "daily activities," SSR

16-3p, 2016 WL 1119029 at *7, and the daily activities that the claimant

reports on their SSA function reports are relevant to that evaluation. *See*

*Bowman v. Comm'r of Soc. Sec.*, 683 F. App'x 367, 376 (6th Cir. 2017)

(relying on plaintiff's function report, completed after the alleged onset date

but about 19 months before the hearing, to find that substantial evidence

supported the ALJ's credibility determination); *Small v. Comm'r of Soc.*

*Sec.*, No. 1:17 CV 1184, 2018 WL 3235659, at *9 (N.D. Ohio June 8,

2018), *adopted*, 2018 WL 3235554 (N.D. Ohio July 2, 2018) (relying in part

on daily activities reported in function report to find that ALJ's decision was

supported by substantial evidence).  Carver's effort to distance herself from

the daily activities that she reported on her SSA function report cannot be credited.

Carver also argues that her subjective limitations are supported by the medical evidence of record.  [ECF No. 14, PageID.681].  She points to a lumbar spine MRI from August 2015 that found disc space narrowing at L3-4 with disc desiccation, subarticular bulging, and facet arthrosis.  [ECF No. 12-7, R. 407].  But the ALJ noted that the disc bulging and facet arthrosis were described as mild, with no severe compressive pathology present.  [*Id.*; ECF No. 12-2, Tr. 21].  The results were summarized by Boris J. Leheta, M.D., as showing "mild degenerative changes" and Dr. Leheta also noted that Carver's subjective complaints are "difficult to quantitate objectively."  [ECF No. 12-7, Tr. 395].

Carver additionally cites a January 2016 report from St. Clair Orthopaedics showing that she told Mark A. Bergin, M.D., that she had left shoulder pain with decreased range of motion for about two years, though without specific trauma, injury or dislocation.  [*Id.*, Tr. 412].  Dr. Bergin noted that she had "[r]eally not had much treatment thus far" and had no other complaints.  [*Id.*].  On examination, Dr. Bergin found no acute distress, no atrophy of the left shoulder, range of motion up to 160, abducting to 100, externally rotating to 60, internally rotating to the

10

midlumbar spine, five out of five strength in all areas, but with positive

impingement signs.  [*Id.*, Tr. 413].  He assessed Carver with rotator cuff

tendinitis and a possible underlying rotator cuff tear.  [*Id.*].  X-rays showed

well-maintained joint spaces and no evidence of an acute fracture.  [*Id.*].

This report supports the ALJ's finding that Carver's testimony is not

consistent with the medical evidence, to the extent that her testimony

suggests that she cannot perform a limited range of sedentary work.

Carver next cites reports from St. Clair Orthopaedics from March

2015 to January 2016, but those records also do not undermine the ALJ's

finding that Carver's statements about the limiting effects of her symptoms

were not entirely consistent with the medical evidence.  In March 2015,

Kanwaldeep S. Sidhu, M.D, examined Carver's back at St. Clair

Orthopaedics, and noted that he had last examined her in July 2014.  [*Id.*,

Tr. 419].  At her March 2015 visit, Carver stated that she had lower back

pain beginning about two months prior, and that it was the first time she

had ever had pain.  [*Id.*].  She described the pain as a "twinge," and said

that she had no numbness, tingling, or paresthesias.  [*Id.*].  The pain was

not constant and rated at a five out of ten.  [*Id.*].

On examination, she was in no acute distress, had mild tenderness to

palpation and mildly limited forward flexibility to due lumbar discomfort.

[*Id.*].  She had five out of five strength in all areas, used no assistive device to ambulate, and had no other abnormal results except mild low back discomfort during straight leg raises, but no resulting radicular symptoms. [*Id.*, Tr. 419-20].  Dr. Sidhu found at that time that she did not need a CT, MRI or surgery, and he suggested nonoperative options, including physical therapy.  [*Id.*, Tr. 420].  He noted that March 2015 lumbar x-rays showed no abnormalities, including no instability or spondylolisthesis.  [*Id.*].

Dr. Sidhu saw Carver again in August 2015, when she again complained of lower back pain, which was described as dull and aching. [*Id.*, Tr. 415].  He noted, "It is more of a nuisance pain rather than an excruciating pain."  [*Id.*].  Carver complained of "difficulty walking distances" and interference with activities of daily living.  [*Id.*].  Her physical examination results were unchanged from those prior, and Dr. Sidhu again encouraged her to avoid surgery, but referred her for epidural injections for the pain.  [*Id.*, Tr. 415-16].

The ALJ noted that during the March 2015 visit to Dr. Sidhu, Carver identified her hobbies as "treadmill" and "shooting guns on gun range." [ECF 12-2, Tr. 21, citing ECF 12-7, Tr. 423].  She also noted that Carver reported during a visit to a pain specialist in December 2015 that she did not require assistance for activities of daily living.  [ECF No. 12-2, Tr. 21,

citing ECF No. 12-8, Tr. 542].  During that visit and others, Ryan Pollina,

M.D., found paraspinal tenderness and diminished sensation in the Achilles

on examination.  [ECF No. 12-8, Tr. 537, 542, 555].  Dr. Pollina opined in

September 2015 that Carver had foraminal stenosis and lumbar

spondylosis with facet arthropathy, but that she was not a good surgical

candidate.  [ECF No. 12-7, Tr. 350].

As for Carver's left shoulder, she underwent arthroscopy,

decompression, and debridement surgery in April 2016. [ECF 12-8, Tr.

614-16].  Post-surgery, Dr. Bergin noted that she was "doing quite well"

with pain "well controlled," and was "[n]ot taking pain medication anymore."

[*Id.*, Tr. 618].  On examination, she had "painless short-arc range of motion"

and "well-healing surgical incisions."  [*Id.*, Tr. 619].

Carver states that the ALJ's credibility determination is based on "a

mischaracterization of the Plaintiff's activities of daily living."  [ECF No. 14,

PageID.682].  But when making her subjective symptom evaluation, the

ALJ in fact considered her activities of daily living as she reported on her

SSA function report and to examining physicians, along with the objective

medical evidence.  The ALJ noted that the function report directly

contradicted her testimony about her ability to bathe, drive, make simple

meals, and do laundry.  [ECF No. 12-2, Tr. 19].  The ALJ also cited a sleep

study in which Carver woke up only once and was in bed for almost ten

hours, despite her testimony of trouble sleeping. [*Id.*, Tr. 20]. The ALJ

further noted Dr. Leheta's opinion that Carver's subjective complaints were

difficult to quantify, and that she reported hobbies of treadmill and shooting

guns at the gun range. [*Id.*, Tr. 21]. And she cited Carver's reporting in

December 2015 that she did not need assistance with activities of daily

living. [*Id.*]. The ALJ also thoroughly examined the record and found

largely normal results or mild impairments. [*Id.*, Tr. 20-21].

The evidence Carver cites in opposition to the ALJ's determination

does not help her case, as the ALJ considered every such citation and

accurately summarized the evidence. The ALJ also detailed which

evidence led to specific RFC restrictions on numerous occasions, such as

a low stress limitation for Carver's complaints about the stress of working

as a correction officer, [*Id.*, Tr. 20], limiting the use of foot controls and

avoiding hazards for her diabetes and related symptomology, [*Id.*],

restrictions on the use of lower extremities due to episodic lower back and

lower extremity pain, [*Id.*, Tr. 21], and limits on her left upper extremity due

to complaints and despite the apparently successful surgery, [*Id.*].

Carver notes her consistent earnings history dating back to 1992.

While it is true that a long work history can be a factor supporting credibility,

14

*Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994), it is far from

dispositive.  *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir.

2016).  And she does not show that she requires a more restrictive RFC,

which is her burden.  *Preslar* 14 F.3d at 1110 (6th Cir. 1994).  The ALJ's

subjective symptom evaluation is supported by substantial evidence, and

her decision should be affirmed.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Carver's motion for summary judgment be [ECF No. 14] be **DENIED**; that

the Commissioner's motion [ECF No. 15] be **GRANTED**; and that the

Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42

U.S.C. § 405(g).


|  | s/Elizabeth A. Stafford |
|---|---|
|  | ELIZABETH A. STAFFORD |
| Dated: October 15, 2018 | United States Magistrate Judge |


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF

System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 15, 2018.

s/Marlena Carver
MARLENA CARVER
Case Manager